CHASE AND CHASE, LLC *v.* WATERBURY REALTY, LLC, ET AL.
(AC 33532)

DiPentima, C. J., and Lavine and Robinson, Js.

Argued May 15—officially released September 25, 2012

*James R. Winkel*, with whom, on the brief, was *William T. Blake*, for the appellant (named defendant).

*Bridget C. Gallagher*, with whom was *Jared D. Cantor*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. This appeal centers on an easement for shared use of a commercial driveway over one parcel of land in Waterbury to access an adjacent parcel. The defendant Waterbury Realty, LLC,[1] appeals from the judgment of the trial court, rendered in favor of the plaintiff, Chase & Chase, LLC. On appeal, the defendant claims that the trial court improperly found that (1) the plaintiff was entitled to a prescriptive easement over the driveway, (2) the plaintiff was entitled to an implied easement over the driveway[2] and (3) the defendant's actions in placing a fence in front of the driveway constituted a malicious erection of a structure. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. Prior to 1973, the plaintiff's parcel and the defendant's parcel constituted a single parcel of land owned by Great Brook Realty, Inc. (Great Brook). In 1973, Great Brook subdivided the property into two parcels, one known as 40 East Farm Street (East Farm property) and the other known as 730 North Main Street (North Main property). In 1973, Great Brook transferred the East Farm property to Marktel Realty.

[1] Great Brook Realty, Inc., also was a defendant in this action. On July 22, 2009, the trial court granted the plaintiff's motion for a default judgment against Great Brook Realty, Inc., for its failure to appear. We therefore refer to Waterbury Realty, LLC, as the defendant.

[2] Because we conclude that the court properly found that the plaintiff was entitled to a prescriptive easement over the driveway and the court found that the implied easement has the same scope as the prescriptive easement, we need not address the defendant's claim that the court improperly found that the plaintiff was entitled to an implied easement.

After various conveyances,[3] the plaintiff acquired title to the East Farm property in 1997. In 2001, Great Brook conveyed the North Main property to the defendant.

The East Farm property borders East Farm Street to its north and Orange Street to its east. It contains two structures: a large main building located at the corner of East Farm Street and Orange Street, and a smaller garage to the south of the main building. The North Main property is west of the East Farm property and also borders East Farm Street to its north. There is approximately twelve feet between the western side of the East Farm property main building and the North Main property boundary line.

A driveway located mostly on the North Main property opens onto East Farm Street and leads south adjacent to the western side of the East Farm property main building.[4] The owners and occupants of both properties use the driveway to access the properties. From at least the time of the subdivision to the present, the only means of ingress and egress for vehicles using the East Farm property has been the driveway.[5] Tenants, customers and suppliers, using various sized trucks, travel on the driveway to access loading docks attached to the main building on the East Farm property. Additionally, tenants, customers and suppliers travel on the driveway to access parking spaces on the west and south side of the main building. Because there is only twelve feet

---

[3] Specifically, Marktel Realty conveyed the East Farm property to Frank LaPorta and Concetta LaPorta in 1981. In 1986, the LaPortas conveyed the property to Chase Realty, which was owned and controlled by the LaPorta family. In 1997, Chase Realty conveyed the East Farm property to the plaintiff, the current owner. The plaintiff also is owned and controlled by the LaPorta family. The LaPorta family, therefore, has had an ownership interest in the East Farm property since 1981.

[4] The entranceway to the driveway is approximately twenty-eight feet wide and is located almost entirely on the North Main property.

[5] Vehicles using the North Main property, however, also could use another entrance on North Main Street to access the North Main property.

between the western side of the main building and the North Main property boundary line, trucks and smaller vehicles also cross onto the North Main property when parked at the loading docks or the parking spaces on the west side of the main building. These uses of the defendant's property have been continuous from 1973 until the time of trial.

Since at least the time of the subdivision, the entranceway to the driveway has had a locked gate. The lock's purpose was to keep trespassers off the North Main and East Farm properties at night. The last person to leave the premises locked the gate at night, and the first person to arrive in the morning unlocked it. The owners of both properties gave their respective tenants keys to the lock. The owners of the East Farm property replaced the lock over the years. At least one tenant of the North Main property replaced the lock on his own initiative without obtaining the consent of the owner of the North Main property. In 2004, the defendant replaced the gate with a new one and distributed keys to the tenants of the North Main property and to the plaintiff and the tenants of the East Farm property.

In February, 2009, the defendant informed the plaintiff that the defendant intended to erect a fence on the driveway along the boundary between the two parcels. The fence would prevent all vehicular traffic from accessing the main building on the East Farm property. The plaintiff's attorney informed the defendant that the plaintiff claimed to have a prescriptive easement over the driveway. Despite this claim, the defendant erected the fence.[6] The plaintiff then brought this action against the defendant alleging that it had acquired a prescriptive easement and an implied easement over the driveway,

---

[6] In anticipation of litigation, the parties entered into a temporary agreement pursuant to which the defendant removed portions of the fence, thus allowing the plaintiff to gain limited access to the East Farm property until the case was resolved.

and seeking to quiet title to its easements and injunctive relief in accordance with the easements. The plaintiff also alleged that the defendant maliciously erected a fence over the easement area and sought injunctive relief in accordance with its malicious erection of a fence claim.[7]

Following a trial to the court, during which the court heard testimony from, among others, current and former tenants, relatives of deceased predecessors in interest, and agents of predecessors in interest, the court found that the plaintiff had established that it acquired a prescriptive easement and an implied easement over the driveway. The court found that the scope of the two easements was depicted in the plaintiff's exhibit number one, a surveyor's map entitled "Map Showing Historic Truck Access Off Of East Farm Street," and the plaintiff's exhibit 1A, which described the proposed easement area in metes and bounds.[8] The court also explained that "[t]he plaintiff's use of said easement shall include the right to pass and repass and to maneuver and park trucks, including trailer trucks, within said easement while using the loading docks all as shown on [the] plaintiff's exhibit [number one]."

Regarding the prescriptive easement, the court found that since 1973, the use of the easement area was open, visible, continuous and uninterrupted for fifteen years and made under claim of right. The court also found that the defendant did not meet its burden of proving, as a special defense, that the plaintiff's use was permissive. Specifically, the court found that "[t]here is no credible evidence that [the defendant] or its predecessors in

---

[7] The plaintiff also alleged a count in trespass and sought damages but subsequently withdrew those claims. Additionally, the defendant filed a counterclaim but withdrew it prior to trial.

[8] The easement area varies in width "but is approximately 28 feet in width" in most locations, which is the width of the entranceway to the driveway.

interest installed a lock before 2004, well after the plaintiff acquired its prescriptive easement. Additionally, there is no evidence that before 2004, [the defendant] or its predecessors in interest ever exercised any dominion over the driveway, ever gave permission to the plaintiff to use the driveway or ever told the plaintiff that it could not use the driveway."

The court also found for the plaintiff on its malicious erection of a fence count, explaining that the plaintiff proved the necessary elements under General Statutes § 52-480. Specifically, the court found: (1) the defendant erected a fence that "was useless to it"; (2) the defendant "erected the fence with the intention to injure the enjoyment of the plaintiff's East Farm property"; and (3) "the erection of the fence has impaired the plaintiff's use of its East Farm property and its value because the fence prohibits the plaintiff, its tenants and their customers from accessing the loading docks of the main building." The court granted the plaintiff a permanent injunction barring the defendant "from constructing any obstacle that would interfere with the plaintiff's use and enjoyment of said easement" and ordered the defendant to remove the remainder of "the fence that it constructed on the boundary of the North Main and East Farm properties and [to] restore the East Farm Street driveway to its former condition in the area where the fence was constructed."

I

The defendant first claims that the court improperly found that the plaintiff was entitled to a prescriptive easement. Specifically, the defendant argues that the plaintiff's use of the driveway was not under a claim of right, was permissive and was the same as that of the general public. The defendant also argues that the plaintiff did not establish the scope of the easement to a reasonable degree of certainty. The plaintiff argues

that there was adequate evidentiary support for the court's findings.

The following principles of law and standard of review govern this claim. General Statutes § 47-37 "provides for the acquisition of an easement by adverse use, or prescription. That section provides: No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years. . . . A party claiming an easement by prescription must demonstrate that the use has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. . . . The standard of proof that is required to establish an easement by prescription is a fair preponderance of the evidence." (Citations omitted; internal quotation marks omitted.) *St. Germain* v. *Hurd*, 128 Conn. App. 497, 501–502, 17 A.3d 516 (2011).

"Whether a right of way by prescription has been acquired presents primarily a question of fact for the trier after the nature and character of the use and the surrounding circumstances have been considered. . . . When the factual basis of a trial court's decision [regarding the existence of a prescriptive easement] is challenged, our function is to determine whether, in light of the pleadings and evidence in the whole record, these findings of fact are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 500.

The defendant argues that the plaintiff did not use the property under a claim of right because the plaintiff's

predecessors in interest, Frank LaPorta and Concetta LaPorta, in 1981, did not know the location of the property line. According to the defendant, "one cannot act under a claim of right when one does not even know that such a right exists." Moreover, the defendant argues that neither the plaintiff nor its predecessors in interest made any "overt claim to any ownership" in the driveway. The defendant supports this argument by pointing to an affidavit of title by Great Brook provided to the defendant when the defendant bought the North Main property, stating that Great Brook did not believe that the plaintiff or its predecessors claimed any legal ownership or interest in the driveway.[9]

The defendant misconstrues the claim of right requirement. "The requirement that the [use] must be exercised under a claim of right does not necessitate proof of a claim actually made and brought to the attention of the owner . . . . It means nothing more than a [use] as of right, that is, without recognition of the right of the landowner, and that phraseology more accurately describes it than to say that it must be under a claim of right. . . . [When] there is no proof of an express permission from the owner of the servient estate, on the one hand, or of an express claim of right by the person or persons using the way, on the other, the character of the [use], whether adverse or permissive, can be determined as an inference from the circumstances of the parties and the nature of the [use]. . . . A trier has a wide latitude in drawing an inference that a [use] was under a claim of right." (Citation omitted; internal quotation marks omitted.) *Slack* v. *Greene*, 294 Conn. 418, 428, 984 A.2d 734 (2009).

[9] The defendant also argues that the plaintiff acknowledged the defendant's ownership of the driveway, and thus did not act under a claim of right, when the plaintiff did not question the defendant's replacement of the entranceway gate in 2004. The defendant concedes, however, that 2004 was outside of the timeframe within which the court found that the prescriptive easement had ripened, which was in 1988. We therefore do not address this argument.

Contrary to the defendant's argument, the plaintiff and its predecessors in interest did not have to be aware that they were using the North Main property and did not have to make "an overt claim to any ownership." See *Crandall* v. *Gould*, 244 Conn. 583, 591 and n.6, 711 A.2d 682 (1998). The trial court's finding that the plaintiff and its predecessors in interest used the driveway "as if they had the 'right' to use it" is adequately supported by the evidence. In particular, the East Farm property owners, tenants and customers continuously used the driveway in an open manner since the time of the subdivision, and there was no evidence that the defendant objected to this use until 2009. Additionally, there was evidence that the East Farm property owners and tenants maintained the driveway by plowing it, repairing cracks and filling potholes. The court's finding regarding the claim of right requirement, therefore, was not clearly erroneous.

The defendant next argues that the evidence demonstrates that its predecessor in interest installed the lock on the gate across the entranceway to the driveway, and, thus, the use of the driveway was permissive. "[I]t is not the plaintiff's burden to establish that an otherwise apparently adverse use of the defendant's property was conducted without the defendant's permission or license. . . . When the defendant raises permission by way of a special or affirmative defense, the burden of proof rests on the defendant . . . who must prove the special defense by a fair preponderance of the evidence. . . . Indeed, a contrary rule would unfairly charge a party with proving a negative." (Citation omitted; internal quotation marks omitted.) *Slack* v. *Greene*, supra, 294 Conn. 435.

The record supports the court's finding that the defendant did not meet its burden of proving that it or its predecessors in interest "installed a lock before 2004" or "gave permission to the plaintiff to use the driveway."

Carl Begley, a tenant of the North Main property and one of the defendant's witnesses, testified that the gate was unlocked when he first became a tenant and that he installed a lock. He also testified that he spoke with the LaPortas before installing the lock but not with Great Brook, the owner of the North Farm property at the time. Moreover, Frank LaPorta, one of the principals of the plaintiff, testified that he did not believe Great Brook ever installed a lock on the gate. Therefore, the court's finding that the defendant failed to meets its burden to prove permission was not clearly erroneous.

The defendant next argues that the plaintiff's use and the use by its predecessors in interest was the same as that of the general public. "Where the use of a right-of-way is in common with the public, the common use is considered to negate a presumption of grant to any individual use. In such a case, the individual user must, in order to establish an independent prescriptive right, perform some act of which the servient owner is aware and which clearly indicates his individual claim of right. . . . A finding that the use made by the claimant and his predecessors in title was not different from that made by the general public is fatal to the establishment of any prescriptive right in the claimant." (Citation omitted; internal quotation marks omitted.) *Gioielli* v. *Mallard Cove Condominium Assn., Inc.*, 37 Conn. App. 822, 829–30, 658 A.2d 134 (1995). The trial court did not make such a finding in this case. As mentioned, there was evidence that the owners of the East Farm property maintained the driveway over the years. Therefore, the fact that the court did not find the use to be the same as that of the general public was not clearly erroneous.

The defendant also argues that the plaintiff did not establish the boundaries of the easement to a reasonable degree of certainty. Specifically, the defendant argues that the plaintiff failed to establish that WB-67 tractor trailer trucks, the size of which factored into

the court's analysis of the scope of the easement,[10] were used continuously from 1973 to 1988.[11] Therefore, according to the defendant, the easement boundary "is larger than that which would have been established as of 1988 and the plaintiff failed to adequately establish the proper bounds of the claimed easement."

"[A] prescriptive right extends only to the portion of the servient estate actually used . . . and is circumscribed by the manner of its use . . . . A prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 124, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). "It is not always necessary or even possible for the party claiming a prescriptive right to establish the precise metes and bounds of the easement. . . . Nor must the common and ordinary use be without any deviation." (Citation omitted.) *St. Germain* v. *Hurd*, supra, 128 Conn. App. 503.

There was sufficient evidence presented to support the court's finding as to the scope of the easement.

[10] A WB-67 tractor trailer truck measures sixty-seven feet from the middle of the front tires to the middle of the rear tires. The trailer attached to the truck measures fifty-three feet, and the total length of the truck measures seventy-three and one-half feet. The plaintiff's surveyor utilized WB-67 tractor trailer trucks in depicting the proposed easement area, which the court ultimately accepted, on plaintiff's exhibit number one.

[11] The defendant also argues that, during trial, Frank LaPorta "admitted that the area depicted in [the plaintiff's exhibit number one] was in fact not necessarily what was needed as an easement, and actually that the easement [area depicted in the exhibit] was significantly longer than that needed and used by the plaintiff." According to the defendant, "[t]he court either overlooked this pertinent testimony, or completely ignored this admission by the plaintiff in finding that the easement to which the plaintiff was entitled consisted of the entire easement [area] set forth in [the plaintiff's exhibit number one]." We disagree. Frank LaPorta was testifying as to an earlier map prepared by the plaintiff's surveyor, which depicted the easement area as extending past the southern boundary of the East Farm property. The plaintiff's exhibit number one, in contrast, depicted an easement area that ended at the southern boundary of the East Farm property.

For example, George Telesco, who was a principal of Marktel Realty, testified that his brother shipped furniture from the main building on the East Farm property using a pickup truck and "a trailer." Douglas Beardsworth, who had been a tenant of the East Farm property since 1978, testified that he and multiple other tenants received deliveries to and shipped goods from various loading docks on the main building via box trucks and tractor trailer trucks. Frank LaPorta testified that WB-67 tractor trailer trucks used the driveway weekly. Multiple witnesses also testified that the easement area depicted on the plaintiff's exhibit number one accurately set forth the area used by vehicles traveling to and from the East Farm property over the years. This evidence supports an inference that tractor trailer trucks as large as WB-67 used the easement area continuously from 1972 to 1988 and, therefore, that the plaintiff established the easement boundaries to a reasonable degree of certainty.

We therefore conclude that the court properly found that the plaintiff was entitled to a prescriptive easement over the driveway.

II

The defendant also claims that the trial court made clearly erroneous findings of fact in determining that the defendant's actions in placing a fence on the driveway constituted a malicious erection of a structure. Specifically, the defendant takes issue with the court's findings that the fence was useless to the defendant and that the plaintiff's use of the main building's western loading docks did not negatively affect the defendant's property. The defendant argues that "there was substantial evidence as to the negative impact that the plaintiff's use of the west loading docks would have on the defendant's development and use of the North Main property." The

plaintiff argues that there was adequate evidentiary support for the court's findings.

"The Connecticut progenitor of what have commonly been called the spite fence cases appears to be *Whitlock* v. *Uhle*, 75 Conn. 423, 53 A. 891 (1903). . . . In [*Whitlock*], our Supreme Court construed and applied the predecessors to General Statutes §§ 52-480 and 52-570 and set forth the elements necessary to state a cause of action under §§ 52-480[12] and 52-570.[13] The court held that the essential elements are: (1) a structure erected on the [defendant's] land; (2) a malicious erection of the structure; (3) the intention to injure the enjoyment of the adjacent landowner's land by the erection of the structure; (4) an impairment of the value of adjacent land because of the structure; (5) the structure is useless to the defendant; and (6) the enjoyment of the adjacent landowner's land is in fact impaired." (Citation omitted; internal quotation marks omitted.) *Jackson* v. *Lee*, 51 Conn. Sup. 399, 416–17, 996 A.2d 762 (2009), aff'd, 121 Conn. App. 375, 996 A.2d 302, cert. denied, 297 Conn. 926, 998 A.2d 1194 (2010). "Whether a structure was maliciously erected is to be determined rather by its character, location and use than by an inquiry into the actual motive in the mind of the party erecting it." *DeCecco* v. *Beach*, 174 Conn. 29, 32, 381 A.2d 543 (1977). Because the defendant is challenging the court's factual findings, we employ the clearly erroneous standard of review. See *Berube* v. *Nagle*, 81 Conn. App. 681, 696–97, 842 A.2d 724 (2004).

[12] General Statutes § 52-480 provides: "An injunction may be granted against the malicious erection, by or with the consent of an owner, lessee or person entitled to the possession of land, of any structure upon it, intended to annoy and injure any owner or lessee of adjacent land in respect to his use or disposition of the same."

[13] General Statutes § 52-570 provides: "An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land."

The defendant argues, citing photographic evidence of trucks parked at loading docks on the East Farm property, that "the court ignored the evidence presented showing tractor trailer trucks parked on the . . . loading docks of the East Farm property substantially, if not entirely, obstructing access to the North Main property as well as impeding potential parking." These photographs, however, were taken after the defendant constructed the fence at issue, thus necessitating the trucks to intrude on the driveway more than if the fence had not been erected. Additionally, on the basis of our review of the photographs, the court reasonably could have found there to be adequate room for vehicles to maneuver around the trucks in the photographs. We also note that there was evidence that the North Main property, unlike the East Farm property, was accessible from another entranceway. Accordingly, we cannot conclude that the court's finding—that the plaintiff's use of the loading docks did not negatively impact the North Main property—is clearly erroneous.

The defendant also argues that the fence was not useless to the defendant in light of the testimony of the LaPortas indicating that "security was a legitimate concern." The testimony to which the defendant refers, however, established that the *gate* across the entranceway to the driveway was locked at night because of security concerns, not that the *fence* blocking access to the East Farm property was erected based on legitimate security concerns. Moreover, the evidence indicated that there were secondary gates already in existence securing the North Main property. Accordingly, we conclude that the court's finding that the fence was useless to the defendant was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.