******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MICHAEL ERRICHETTI *v.* DANIEL
BOTOFF ET AL.
(AC 40143)

Lavine, Moll and Bishop, Js.

*Syllabus*

The plaintiff brought this action seeking injunctive relief pursuant to statute
(§ 52-480) in connection with the alleged conduct of the defendants, D
and L, in maliciously erecting a fence on certain of their real property
that bordered the plaintiff's property. Following a trial to the court,
the trial court rendered judgment in favor of plaintiff and ordered the
defendants to remove the fence and to restore the surrounding area to
its previous condition. On the defendants' appeal to this court, *held*:

1. The trial court properly determined that the plaintiff was entitled to an
   injunction pursuant to § 52-480 and that the defendants erected the
   fence maliciously and with the intent to injure the plaintiff's enjoyment
   of his land: the defendants' claim that the court based its determinations
   of malice and intent to injure on clearly erroneous findings that the
   fence was useless and that the fence impairs the plaintiff's enjoyment
   of his property was unavailing, as uselessness under § 52-480 focuses
   on whether the structure served an actual use, not whether the defen-
   dants can merely assert a purpose for erecting the structure, the court,
   in making its findings, was free to reject parts of L's testimony that she
   and D had erected the fence for privacy and safety, and to credit certain
   parts of the plaintiff's testimony that anyone can walk around the ends
   of the fence to enter his property and concerning the aesthetics of the
   wooded area and wetlands surrounding his home prior to the defendants'
   erection of the fence and how the fence impaired his enjoyment of his
   property, and the court's findings of the absence of any real usefulness
   of the fence and that the fence impairs the plaintiff's enjoyment of his
   property were not clearly erroneous; moreover, the trial court did not
   err with respect to its finding that the fence was out of character with
   the neighborhood, as the court explicitly credited the testimony of the
   plaintiff's expert that the fence caused the plaintiff's property to lose a
   beneficial wooded view, which reduced the value of his property, and
   it was not for this court to second-guess the trial court's assessment of
   the credibility of the witnesses.

2. The defendants could not prevail on their claim that the trial court erred
   in ordering them to restore the area in which the fence was erected to
   its previous condition: the plaintiff clearly requested that relief in his
   complaint and there was nothing in the record demonstrating that he
   ever abandoned that request, and the relief ordered by the court fell
   within the statutory authority conferred by § 52-480, as it was remedial
   in nature and consistent with the principle that the effect of the statute
   should not be extended beyond the evil it was intended to remedy;
   moreover, the court's order was not vague, as the plaintiff testified
   extensively as to the area's appearance prior to the fence and entered
   several photographs of the area into evidence, and the defendants did
   not file any motion seeking clarification of the court's order, which was
   not so vague that persons of common intelligence would necessarily
   have to guess at its meaning or differ as to its application.

Argued May 16—officially released October 2, 2018

*Procedural History*

Action for an injunction precluding the defendants
from erecting a fence, and for other relief, brought to
the Superior Court in the judicial district of Stamford-
Norwalk and tried to the court, *Heller, J.*; judgment for
the plaintiff, from which the defendants appealed to
this court; thereafter, the court, *Jacobs, J.*, granted the
defendants' motion for a stay of the judgment pending

appeal. *Affirmed.*

*Patrick M. Fahey*, with whom, on the brief, was *Matthew Ranelli*, for the appellants (defendants).

*John R. Harness*, for the appellee (plaintiff).

*Opinion*

MOLL, J. This case is about a so-called "spite fence" erected along the border between two residential properties in Greenwich. The defendants, Daniel Botoff and Laura Botoff, appeal from the trial court's judgment rendered in favor of the plaintiff, Michael Errichetti, entering an injunction pursuant to General Statutes § 52-480,[1] which required the defendants to remove the fence that they had constructed on their property and to restore the surrounding area. On appeal, the defendants claim that the court erred by (1) finding the second and third elements of § 52-480 satisfied, namely, a malicious erection of the structure and the intention to injure the enjoyment of the adjacent landowner's property, and (2) ordering the defendants to restore the area in which the fence was erected to its previous condition. We disagree, and, accordingly, we affirm the judgment of the trial court.

The trial court found the following facts that are relevant to this appeal. To aid the reader, we include from a trial exhibit (plaintiff's exhibit 5) a diagram of the properties at issue. "B" identifies the defendants' property; "E" identifies the plaintiff's property.



Since 1993, the plaintiff and his wife have owned and resided at a property located at 86 Rockwood Lane in Greenwich. In 2011, the defendants purchased, and have since resided at, a property located at 5 Dogwood Lane in Greenwich. Both properties are located in a two acre zoning district. Part of the defendants' backyard abuts part of the plaintiff's yard that lies to the north of his house. The defendants' property is bounded to the northeast by property belonging to the Betters, to the west by property belonging to the Zorthians, and to the south by both the plaintiff's property and property belonging to the plaintiff's neighbor to the west, the

Mickleys. The parties share a common boundary of 160 feet. In 2014, the defendants built a wooden stockade style fence along a 103 foot portion of this 160 foot boundary.[2]

At trial, the plaintiff described the area surrounding his home. The trial court found that to the northwest of the plaintiff's house is a "natural wooded area, most of which is wetlands," that covers part of the plaintiff's, the defendants', the Zorthians', and the Mickleys' properties. The wooded area creates a forty to sixty foot buffer between the parties' properties. A stream flows through this area on its way to Long Island Sound, and an old farmer's wall runs along the parties' shared boundary. The parties' properties each slope up from the stream to their respective homes. In 2004, the plaintiff and his wife renovated their house so that several main rooms offered views of the wooded area. According to the plaintiff, prior to the erection of the fence, he had "felt that his yard was very tranquil and beautiful" and "that he would not have purchased [his] property if the fence had been there already."

After purchasing the property in 2011, the defendants immediately began renovating the house. According to Laura Botoff's testimony, when she and her husband bought the property, they discussed erecting a fence and potentially installing a pool but decided to complete the work in phases for financial reasons. In 2012, after completing the renovations to the house, they began a landscaping project "to make sure that [the backyard] was safe for their young sons." When the defendants began the landscaping project, they had the property staked for a fence. Laura Botoff testified that she and her husband believed that a fence would provide them with privacy and security, but they did not erect the fence for another two years after having it staked. During this period, the relationship between the parties deteriorated.

At trial, the parties testified about a few interactions they had concerning their shared boundary. According to the plaintiff, in the spring of 2012, he saw the defendants' landscaping project expanding into the wooded area between his and the defendants' homes. Assuming that the defendants had not received the proper approvals from the Greenwich Inland Wetlands and Watercourses Agency (agency), the plaintiff walked over to the defendants' house, introduced himself to Laura Botoff, and explained that she should contact the agency before proceeding with the project. Laura Botoff's recounting of the interaction differs. She testified that he approached her, without first identifying himself, to question her about the nonexistence of wetlands flags.

The next notable incident occurred in 2014, when the plaintiff noticed Laura Botoff walking along their shared boundary with a man who appeared to be mea-

suring for a fence. The plaintiff testified that he went outside to ask Laura Botoff whether they were measuring for a fence and that, when she responded that they were, he reminded her that she needed approval from the agency before building anything in the wetlands. According to the plaintiff, Laura Botoff became agitated, at which point the plaintiff left and called the agency to report the defendants' plans for a fence. Again, Laura Botoff's recollection differs. According to her testimony, she calmly explained that she understood that she could build the fence as long as she received the proper permits, and, after the plaintiff returned to his house, she called the Greenwich Police Department to file a complaint. Shortly after this incident, the defendants applied to the agency for a permit to build the fence. The agency issued the permit over the plaintiff's opposition.[3]

In June, 2014, the plaintiff commenced the underlying action, seeking injunctive relief pursuant to § 52-480. In August, 2014, the defendants installed the fence. In February, 2017, following a two day bench trial, at which all parties and their respective expert appraisers testified, the court rendered judgment in favor of the plaintiff and against the defendants. In its memorandum of decision, the court found that the plaintiff had met his burden of proof with respect to his claim under § 52-480 and, as injunctive relief, ordered the defendants to remove the fence and to restore the surrounding area to its previous condition. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the defendants first claim that the court erroneously determined that the plaintiff was entitled to an injunction pursuant to § 52-480. Specifically, they argue that the court, in determining that the defendants had erected the fence maliciously and with the intent to injure the plaintiff's enjoyment of his land, relied on clearly erroneous subordinate findings, namely, that the fence is useless, impairs the plaintiff's enjoyment of his property, and is out of character with the neighborhood. The plaintiff argues, to the contrary, that the evidence adequately supports the court's findings. We agree with the plaintiff.

A

We begin by setting forth the standard of review and relevant law. "When the factual basis of a trial court's decision . . . is challenged, our function is to determine whether, in light of the pleadings and evidence in the whole record, these findings of fact are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Chase & Chase, LLC* v. *Waterbury Realty, LLC*, 138 Conn. App. 289, 296, 50 A.3d 968 (2012).

"The Connecticut progenitor of what have commonly been called the spite fence cases appears to be *Whitlock* v. *Uhle*, 75 Conn. 423, 53 A. 891 (1903). . . . In [*Whitlock*], our Supreme Court construed and applied the predecessors to General Statutes §§ 52-480 and 52-570[4] and set forth the elements necessary to state a cause of action under §§ 52-480 and 52-570. The court held that the essential elements are: (1) a structure erected on the [defendant's] land; (2) a malicious erection of the structure; (3) the intention to injure the enjoyment of the adjacent landowner's land by the erection of the structure; (4) an impairment of the value of adjacent land because of the structure; (5) the structure is useless to the defendant; and (6) the enjoyment of the adjacent landowner's land is in fact impaired." (Footnote added; footnotes omitted; internal quotation marks omitted.) Id., 302. The plaintiff bears the burden of demonstrating each of these elements by a fair preponderance of the evidence. See *Rutka* v. *Rzegocki*, 132 Conn. 319, 322, 43 A.2d 658 (1945); see generally *Deane* v. *Kahn*, 179 Conn. App. 58, 73–74, 178 A.3d 403 (2018) (plaintiff bears burden of proof).

In its memorandum of decision, the court set forth the six *Whitlock* elements, found facts relating to each, and concluded that the plaintiff had satisfied his burden with respect to all six elements. The court began its analysis by stating that, with respect to the first element, "it is undisputed that the fence is a 'structure' that was erected on the [defendants'] property." The court then noted that the remaining *Whitlock* elements were "interrelated to a large extent, with the court's findings on the last three [elements] serving to inform the court's analysis on the issues of malice and intent" and, accordingly, analyzed those three elements first. After concluding that "the fence has impaired the value of the [plaintiff's] property; the fence is useless to the [defendants]; and the fence has impaired the enjoyment of the [plaintiff's] property," the court turned to the remaining two elements. In determining that the plaintiff demonstrated that the defendants had maliciously erected the fence, the court relied on the following facts: "[T]he [defendants] have erected a stockade style fence along 103 feet of the boundary between their property and the [plaintiff's] property. They did not install a fence anywhere else on their property. The fence was installed across a previously unspoiled wooded area and wetlands. It blocks [the plaintiff's] view of the natural surroundings and intrudes upon his enjoyment of his own property. The fence is out of character for the neighborhood. It does not provide privacy, safety or security to the [defendants]. Accordingly, the court

finds that the fence was maliciously erected." Similarly, the court based its finding that "the [defendants] intended to injure the enjoyment of the [plaintiff's] property when they erected the fence" on the following: "As the court has found, the fence impairs the value of the [plaintiff's] property and [the plaintiff's] enjoyment of the property. The fence is unsightly and out of character in the parties' residential neighborhood. The fence is useless to the [defendants]."

On appeal, the defendants do not directly challenge the court's conclusion that the plaintiff satisfied the last three *Whitlock* elements. Instead, the defendants challenge the court's "subordinate findings" of uselessness, impairment of the plaintiff's enjoyment of his property, and the fence being out of character with the neighborhood, to the extent that those findings support the court's conclusions that the fence was erected maliciously and with the intent to injure the plaintiff's enjoyment of his land. We address these "subordinate findings" in turn.[5]

Initially, we note that when determining whether the plaintiff has met his burden with respect to the second and third elements of the *Whitlock* test, the court does not "journey deep into the defendant's heart." *Geiger* v. *Carey*, Superior Court, judicial district of Litchfield, Docket No. CV-11-500-7327-S (February 25, 2015) (reprinted at 170 Conn. App. 462, 487, 154 A.3d 1093 [2017]). "Whether a structure was maliciously erected is to be determined rather by its character, location and use than by an inquiry into the actual motive in the mind of the party erecting it." *DeCecco* v. *Beach*, 174 Conn. 29, 32, 381 A.2d 543 (1977); see also *Gallagher* v. *Dodge*, 48 Conn. 387, 393, 40 Am. Rep. 182 (1880) ("The inquiry into and adjudication upon a man's motives has always been regarded as beyond the domain of civil jurisprudence, which resorts to presumptions of malice from a party's acts instead of enquiring into the real inner workings of his mind. When, therefore, we enquire how far a man was actuated by malice in erecting a structure upon his own land, we are enquiring after something that it will always be very difficult to ascertain, unless we adopt, as in other cases where the courts enquire after malice, a presumption of malice from the act done."). Similarly, assessing whether the defendants possessed the requisite intent to injure "relates to the thing done, its purpose and effect, and does not depend on the existence or nonexistence of personal spite or ill-will." *Whitlock* v. *Uhle*, supra, 75 Conn. 427.

"It is quite possible for a structure to bear on its face . . . convincing evidence that it was intended for a legitimate purpose, or that it was intended to injure the adjacent land and its owner. . . . The intention is not the motive from which it may have sprung, but the established purpose, from whatever motive, to use the

land in a manner not justified by its ownership, and forbidden by law. . . . The intent to injure is determined mainly from the fact that the structure does impair the value of the adjacent land and injure the owner in its use, from the absence of any real usefulness of the structure . . . to the defendant, and from the character, location and surroundings of the structure itself . . . ." (Citation omitted; internal quotation marks omitted.) *DeCecco* v. *Beach*, supra, 174 Conn. 32. "When a structure, useless to the owner, injuring adjacent land and its owner, intended to work such injury, is wilfully erected, it is maliciously erected; that is, it is erected in knowing disregard of the law and the rights of others." *Whitlock* v. *Uhle*, supra, 75 Conn. 427. "[O]nce it is established that malice was the primary motive in [the fence's] erection, the fact that it also served to protect the [defendants'] premises from observation must be regarded as only incidental, since to hold otherwise would be to nullify the statutes." *DeCecco* v. *Beach*, supra, 32–33.

B

We first address the defendants' argument that the court based its determinations of malice and intent to injure on a clearly erroneous finding that the fence is useless. In determining that the fence "does not provide privacy, safety or security" to the defendants and is, instead, useless, the court relied on the findings of fact that it had recited when concluding that the plaintiff had satisfied the fifth *Whitlock* element, i.e., uselessness of the structure.[6] The defendants rely primarily on Laura Botoff's testimony as support for their argument that the court's finding of uselessness was clearly erroneous.[7]

As an initial matter, the defendants seem to suggest that uselessness of a structure cannot be found if the owner of the structure merely articulates an ostensibly useful purpose. We reject this argument. Uselessness under § 52-480 focuses on whether the structure serves an actual use, not whether the defendants can merely assert a purpose for erecting the structure. See, e.g., *DeCecco* v. *Beach*, supra, 174 Conn. 32 ("intent to injure is determined . . . [inter alia] from the absence of any *real* usefulness of the structure" [emphasis added]); *Harbison* v. *White*, 46 Conn. 106, 109 (1878) (rejecting defense to malice element—that structure screened defendants' premises from persons occupying plaintiff's house—because "[t]o concede this would be to nullify the statute; for it is not possible for malice to conceive any kind or form of structure which would not in some measure protect premises from observation"); see also *Panagos* v. *Cooke*, Superior Court, judicial district of Fairfield, Docket No. CV-03-0405596-S (February 9, 2006) (notwithstanding fact that fence was erected to prevent intruders from entering defendant's property, fence was deemed spite fence because its construction

allowed intruders to enter property at various other locations); *Brabant* v. *McCarthy*, Superior Court, judicial district of Litchfield, Docket No. CV-96-0070352 (August 9, 1996) (although fence was erected to prevent neighbors from trespassing on property, portion of fence was deemed spite fence because defendants could not "plausibly argue [it was] of benefit to them"); *Horan* v. *Farmer*, Superior Court, judicial district of New Haven, Docket No. 30-29-95 (October 31, 1990) (notwithstanding fact that fence was erected for privacy and to prevent vandalism, fence was deemed spite fence because other factors indicated primary motive was malice).

At trial, Laura Botoff testified that she and her husband had erected the fence to provide privacy and safety for them and their children; she testified that the fence does, in fact, serve its intended purposes. For instance, she stated that the fence "deters other people from coming into the yard and it allows for the children to feel more secure because we do have privacy . . . ." Further, she testified that the fence in question, combined with the deer fence erected on the Betters' property and the wetlands separating their property from that of the plaintiff and the Zorthians, prevents the defendants' children from leaving their property. On cross-examination, however, Laura Botoff admitted that, because the fence only ties into the Betters' deer fence on one end and does not connect to any other fencing at the other end, the children could leave their property by crossing the wetlands and going around the end of the fence onto the plaintiff's property. Likewise, she conceded that the way the fence exists now someone on the plaintiff's side of the property could walk around it and get to the defendants' side of the property, and the fence does not prevent someone standing in the defendants' yard from viewing the plaintiff's property. This portion of her testimony was consistent with the plaintiff's testimony that anyone could walk around the ends of the fence to enter his property from the defendants' property and that, because the parties' properties slope downward toward the fence, "when you stand on the sloping topography that is [his] yard and [his] lawn at that point, you can clearly see right over the fence into the [defendants'] backyard." Likewise, the court's description of the fence is consistent with these portions of Laura Botoff's and the plaintiff's testimony.

In its memorandum of decision, the court noted that, although the defendants erected the fence for privacy and safety, "[t]he fence as installed does not extend along the entire boundary between the [plaintiff's] property and the [defendants'] property. There is a narrow space between the end of the fence and the Betters' mesh deer fence on the eastern side of the [defendants'] property. The opening at the other end, near the Zorthian[s'] property, is approximately fifty-seven feet wide.

. . . The fence does not block the view from the [plaintiff's] property of the [defendants'] house, patio, and backyard. Apart from any obstruction due to the natural vegetation, there is a clear sight line from one yard to the other because the properties slope down toward their common boundary. The fence would have to be substantially higher to block or screen the view entirely."

The court was free to reject parts of Laura Botoff's testimony and to credit the plaintiff's. See, e.g., *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 507, 646 A.2d 1289 (1994) ("[It] was for the trial court to weigh the evidence and determine the credibility of the witnesses. . . . A trier of fact is free to reject testimony even if it is uncontradicted . . . and is equally free to reject part of the testimony of a witness even if other parts have been found credible." [Citations omitted; internal quotation marks omitted.]). Upon review of the evidence, we are not "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Chase & Chase, LLC* v. *Waterbury Realty, LLC*, supra, 138 Conn. App. 296. Accordingly, we conclude that the court's finding of "the absence of any *real* usefulness" of the fence; (emphasis added) *DeCecco* v. *Beach*, supra, 174 Conn. 32; was not clearly erroneous.

C

We next turn to the defendants' argument that the court based its findings of malice and intent to injure on a clearly erroneous finding that the fence impairs the plaintiff's enjoyment of his property. Similar to the court's finding of uselessness in the context of its determination of malice and intent to injure, the court did not recite independent facts when it found that the fence "intrudes upon [the plaintiff's] enjoyment of his property" and, therefore, was erected maliciously with an intent to injure the plaintiff. Instead, the court relied on the findings that it had recited when concluding that the plaintiff had satisfied the sixth *Whitlock* element, i.e., impairment of the plaintiff's enjoyment of his land.[8] In challenging this finding, the defendants primarily argue that the plaintiff has not suffered any objective harm, such as an interference with the flow of light or air across, or the increased risk of damage from rain or snow to, his property. According to the defendants, the only harm suffered by the plaintiff was an impaired view of the defendants' backyard.[9]

As the court noted, "[t]he use and enjoyment of property may . . . be impaired by the intrusion of an unsightly structure into a vista that was formerly unspoiled." See, e.g., *DeCecco* v. *Beach*, supra, 174 Conn. 30–31. Although the court stated that this "fence itself may not be ugly as far as stockade fences are concerned," it nevertheless credited the plaintiff's testi-

mony and found that the fence impairs his enjoyment of his property. The plaintiff testified extensively about the aesthetics of the wooded area and wetlands surrounding his home prior to the defendants' erection of the fence. He submitted several photographs of the area into evidence, including photographs depicting the dense woods separating the parties' properties and of the fence running along the border between their yards and cutting across the wetlands and stream. As the plaintiff and his expert testified, the plaintiff had designed several rooms of his house to afford views of these wetlands. The fence, therefore, is clearly visible from these rooms, as well as from his yard and when pulling up to the front of the house. The plaintiff testified that he had purchased this property because of the "natural wooded surroundings" and that if he "had seen . . . a stockade fence . . . [he] would not have purchased the property."

We again note that it is within the province of the trial court to assess the credibility of the witnesses; see, e.g., *Normand Josef Enterprises*, *Inc.* v. *Connecticut National Bank*, supra, 230 Conn. 507; and that the court credited the plaintiff's testimony. Upon review of the evidence and in giving "every reasonable presumption . . . in favor of the trial court's ruling," we are not convinced "that a mistake has been committed." (Internal quotation marks omitted.) *Chase & Chase, LLC* v. *Waterbury Realty, LLC*, supra, 138 Conn. App. 296. Accordingly, we conclude that the court's finding that the fence impairs the plaintiff's enjoyment of his property was not clearly erroneous.

### D

Finally, we address the defendants' argument that the court clearly erred in finding that "[t]he fence is . . . out of character in the parties' residential neighborhood." In its memorandum of decision, the court described the fence and surrounding area, noting that "[b]oth properties are located in the Greenwich RA 2 zoning district, which is a two acre zoning district." The court proceeded to describe the natural wooded area and the "old fieldstone farmer's wall between the two properties." The fence, which runs along this fieldstone wall, "is a stockade style fence with a natural wood finish and capped posts between the fence sections." Nevertheless, the court noted that the plaintiff "described the fence as a commercial grade, stockade fence, of the type that he was accustomed to seeing beside a supermarket, not in a residential area" and that "he had not seen similar fences in the Rockwood Lane neighborhood, although the house across the street from the [plaintiff's] property has an old four foot tall stockade type pool fence, which he understood was required by the town of Greenwich."

The court heard conflicting testimony from the parties and their experts concerning the character of the

neighborhood. According to the plaintiff, "on average, the homes [in this neighborhood] are worth anywhere between . . . four and seven million dollars," and his property "would achieve at least five million dollars in the market." Although the defendants' expert testified that fences are "not uncommon in Connecticut, in Greenwich" and that the property across the street from the plaintiff has a stockade fence, the plaintiff's expert testified that stockade fences "are rare in property values such as this neighborhood." In discussing the testimony of the parties' respective experts regarding the impact of the fence on property values, the court explicitly credited the testimony of the plaintiff's expert. The court stated "that the fence caused the [plaintiff's] property to lose a beneficial wooded view, which reduced the value of the [plaintiff's] property by 1 to 5 percent." Laura Botoff testified that the Betters and Mickleys had installed fences on their properties, which conflicted with the plaintiff's testimony that he had not seen fences like this elsewhere in his neighborhood of Rockwood Lane. When questioned about the fence across the street from his house, the plaintiff described it as an old, approximately four foot tall pool fence that, for the most part, is not visible from the street and would be removed as soon as the owners remove the pool that it encloses.

Although the court received evidence of other fences in the neighborhood, "[w]e cannot second-guess the trial court's assessment of the credibility of the witnesses . . . . It is the trial court which had an opportunity to observe the demeanor of the witnesses and parties; thus, it is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, supra, 230 Conn. 507. Upon review of the evidence in the record, we are not firmly convinced "that a mistake has been committed"; (internal quotation marks omitted) *Chase & Chase, LLC* v. *Waterbury Realty, LLC*, supra, 138 Conn. App. 296; and, therefore, the court's finding in this regard is not clearly erroneous.

In sum, the court did not clearly err with respect to any of the subordinate findings challenged by the defendants in connection with the second and third *Whitlock* elements, i.e., malice and intent to injure. We therefore affirm the court's conclusion that the plaintiff was entitled to an injunction pursuant to § 52-480.

II

The defendants also claim that the court erred by ordering them to "restore the area in which the fence was erected to its previous condition." They argue that the plaintiff abandoned this request for relief, the court exceeded its statutory authority by ordering "the landowner to do anything other than take down the offending structure," and the order is impermissibly

vague.[10] These arguments are unavailing.

The defendants first contend that the plaintiff had abandoned seeking the relief ordered by the court because he did not explicitly mention this particular relief in his trial management report, at trial, or in his posttrial brief. "[T]he scope and quantum of injunctive relief rests in the sound discretion of the trier . . . ." *DeCecco* v. *Beach*, supra, 174 Conn. 35. The plaintiff's complaint specifically sought, in relevant part, "[p]ermanent injunctive relief ordering the [defendants] . . . to remove any construction work to date and to restore the wetlands and watercourse area to its previous condition . . . ." See, e.g., *Levesque Builders, Inc.* v. *Hoerle*, 49 Conn. App. 751, 758, 717 A.2d 252 (1998) ("general rule is that a prayer for relief must articulate with specificity the form of relief that is sought" [internal quotation marks omitted]). The plaintiff clearly requested the relief granted, and "there is nothing in the record which discloses that the plaintiff ever abandoned" that request. *Varley* v. *Varley*, 170 Conn. 455, 459, 365 A.2d 1212 (1976). Accordingly, this argument fails.

The defendants' second argument is that the court lacked the authority to grant such relief. "Any determination regarding the scope of a court's . . . authority to act presents a question of law over which our review is plenary." *Tarro* v. *Mastriani Realty, LLC*, 142 Conn. App. 419, 431, 69 A.3d 956, cert. denied, 309 Conn. 912, 69 A.3d 308, 309 (2013). Section 52-480 provides in relevant part that the court has the authority to order "[a]n injunction . . . against the malicious erection . . . of any structure . . . intended to annoy and injure any owner or lessee of adjacent land in respect to his use or disposition of the same." The defendants rely on *DeCecco* v. *Beach*, supra, 174 Conn. 35, for the proposition that § 52-480 does not permit an injunction beyond the removal of the offending structure. In that case, however, our Supreme Court found error in an order "enjoining the building of any other structures on that portion of the land from which it ordered removal of the fence since that part of the judgment went beyond the relief to which the plaintiff was entitled under the statutes." Id. The injunctive relief at issue in this case is materially different in that the court ordered the defendants to return the land to its prior condition, which is remedial in nature and consistent with the well settled principle that the effect of § 52-480 "should not be extended beyond the evil it was intended to remedy." *Whitlock* v. *Uhle*, supra, 75 Conn. 426. Simply stated, we conclude that the relief ordered by the court falls within the statutory authority conferred by § 52-480.

The defendants' final argument is that the order is impermissibly vague because "the record does not address how the [defendants'] property appeared in a

manner by which compliance—or lack of compliance—with the trial court's permanent injunction could be reasonably assessed." Following the issuance of the court's memorandum of decision, the defendants did not file any motion seeking clarification of this order. Additionally, as previously noted, the plaintiff testified extensively as to the area's appearance prior to the installation of the fence and entered several photographs of the area into evidence. Accordingly, we conclude that this injunction is not "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." (Internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 339, 152 A.3d 1230 (2016).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-480 provides: "An injunction may be granted against the malicious erection, by or with the consent of an owner, lessee or person entitled to the possession of land, of any structure upon it, intended to annoy and injure any owner or lessee of adjacent land in respect to his use or disposition of the same."

[2] Although the defendants had applied for, and the Greenwich Inland Wetlands and Watercourses Agency had issued, a permit for a 110 foot fence, the agency later decided that the fence could be only 103 feet long.

[3] In June, 2014, the plaintiff appealed from the agency's decision to the Superior Court, which action the court dismissed in July, 2015. See *Errichetti* v. *Inland Wetlands & Watercourses Agency*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FST-CV-14-6022517-S (July 28, 2015) (60 Conn. L. Rptr. 892). The plaintiff did not appeal from that dismissal to this court.

[4] Whereas § 52-480 provides for injunctive relief for the malicious erection of a structure, § 52-570 provides a legal remedy therefor. See, e.g., *Geiger* v. *Carey*, Superior Court, judicial district of Litchfield, Docket No. CV-11-5007327-S (February 25, 2015) (reprinted at 170 Conn. App. 462, 466, 154 A.3d 1093 [2017]). This case concerns solely § 52-480.

[5] In their brief to this court, the defendants argue that "[b]ecause the subordinate facts necessary for [the court's] finding [of intent to injure] are essentially the same as those required for a finding of malice, and because the subordinate findings analyzed [with respect to malice] . . . are clearly erroneous, the trial court's finding that the [defendants] intended to injure [the plaintiff's] land was also in error." The defendants do not provide additional analysis specific to their claim regarding the intent to injure element. We likewise analyze these two claims together.

[6] With respect to the fence's uselessness, the court found that "the fence does not completely enclose the [defendants'] property. The [defendants] did not erect a fence on the eastern boundary of their property with the Better[s'] property, or on the western boundary with the Zorthian[s'] property, or on the southern boundary with the Mickley[s'] property. The fence extends for only 103 feet on the southern border of the [defendants'] property, which is less than two thirds of the 160 foot boundary between the [defendants'] and [the plaintiff's] properties.

"The fence does not prevent the [defendants'] children from exploring the [plaintiff's] property or the rest of the neighborhood. Similarly, the fence does not block anyone from entering the [defendants'] property through the [plaintiff's] property. The [defendants'] children—and anyone else—can venture from the [defendants'] property to the [plaintiff's] property and back through the fifty-seven feet of the border that remains unfenced. . . . The [defendants'] house, patio, and backyard are as visible from the [plaintiff's] property as they were before the fence was erected."

[7] The defendants also argue that the court misapprehended the law by concluding that "a 'spite fence' may serve some purpose yet still be objectionable." The defendants seemingly argue that where a structure serves a use, the plaintiff must show malice in fact. The defendants, however, fail to recognize that the court found, as a matter of fact, that the fence in question does not serve a use. Additionally, as previously noted, our Supreme Court

has stated that "[w]hether a structure was maliciously erected is to be determined rather by its character, location and use than by an inquiry into the actual motive in the mind of the party erecting it." *DeCecco* v. *Beach*, supra, 174 Conn. 32. Accordingly, the defendants' argument fails.

[8] With respect to this element, the court found that "[t]he fence blocks the view from the [plaintiff's] property of the natural surroundings that [the plaintiff] previously enjoyed. The fence is out of character for the surrounding area—described by [the plaintiff's expert] as having a park-like aesthetic—and it starkly intrudes upon what would otherwise be an unspoiled vista. [The plaintiff] testified that it is impossible to look into his yard without seeing the fence. While the fence itself may not be ugly as far as stockade fences are concerned—it is new and apparently well-constructed—it is unsightly as installed across 103 feet of woodland and wetlands on the boundary between two residential properties in the Greenwich RA 2 zoning district."

[9] In addition to arguing that the evidentiary basis for the court's finding was insufficient, the defendants argue that this finding was clearly erroneous because the statute and relevant case law do not provide a landowner with the right to a view of a neighbor's property. Similarly, the defendants argue that the court erroneously construed the statute broadly by ordering the defendants to remove the fence based on its interference with the plaintiff's interest in a view onto their property. See, e.g., *Willoughby* v. *New Haven*, 123 Conn. 446, 454, 197 A. 85 (1937) ("operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope"). The defendants premise this argument on the fact that their "[r]esearch has not revealed a case where . . . § 52-480 was successfully invoked on the grounds that a structure obstructed an adjoining property owner's view onto her neighbor's property itself."

These arguments misconstrue the court's memorandum of decision. The court considered the fence's effect on the plaintiff's view of the surrounding woods and wetlands, some of which is situated on the defendants' property, when finding that the fence impairs the plaintiff's enjoyment and value of his property. Contrary to the defendants' arguments, the court did not find that the plaintiff has a right to a view of their land. Additionally, as our Supreme Court has noted, "[i]t is only incidental that the plaintiff, having established the elements necessary for relief under the [statute], might acquire in the process a . . . view" of the defendants' land. *DeCecco* v. *Beach*, supra, 174 Conn. 34 (rejecting defendant's argument that judgment in favor of plaintiff created unlawful visual easement across defendant's land where portion of fence that obstructed plaintiff's view of river was spite fence). Accordingly, these arguments fail.

[10] The plaintiff argues that this claim is unreviewable because the defendants failed to seek an articulation of the court's basis for this portion of the order. Although Practice Book § 61-10 places the burden on "the appellant to provide an adequate record for review," that section provides in relevant part that "[t]he failure of any party on appeal to seek articulation pursuant to Section 66-5 shall not be the sole ground upon which the court declines to review any issue or claim on appeal." We therefore reject this argument.

––––––––––––––––––––