******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# BENJAMIN WHELAN ET AL. *v.*
# TRAVIS BRESTELLI ET AL.
## (AC 46449)

Bright, C. J., and Clark and Westbrook, Js.

*Syllabus*

The defendants appealed from the trial court's judgment for the plaintiffs for, inter alia, the defendants' breach of a settlement agreement and from its award of attorney's fees and costs to the plaintiffs. The parties were abutting lakefront property owners who had entered into a settlement agreement resolving various disputes regarding the properties. On appeal, the defendants claimed, inter alia, that the court improperly found that their installation of a new fence breached the settlement agreement, which provided for the removal of an existing fence that partially blocked the plaintiffs' lake view and access to utility poles. *Held*:

The trial court properly determined that the defendants breached the settlement agreement by erecting a new fence that continued to interfere with the plaintiffs' reasonable and lawful use of their property, as the court's finding was legally correct and well supported by the record.

The trial court did not improperly determine that the defendants had erected a "spite fence" in violation of the relevant statutes (§§ 52-480 and 52-570), as the defendants failed to demonstrate that any of the court's factual findings were clearly erroneous and there was ample support in the record for its determination.

The trial court did not abuse its discretion when it allowed the plaintiffs to amend their complaint during trial, the defendants having failed to demonstrate that the court's decision to allow the amendment caused any unreasonable delay, misled or took unfair advantage of the defendants, or confused the issues.

The defendants could not prevail on their claim that the trial court improperly rendered judgment for the plaintiffs on the count of the complaint alleging a breach of the implied covenant of good faith and fair dealing, as there was sufficient evidence before the court to support its finding that one of the defendants intentionally entered into the settlement agreement in bad faith and interfered with the plaintiffs' right to the benefit of their bargain.

The trial court properly awarded the plaintiffs their reasonable attorney's fees and costs pursuant to the terms of the parties' settlement agreement and, to the extent that the defendants claimed that the court abused its discretion regarding its determination as to the amount of attorney's fees it awarded or that certain categories of fees should not have been included

as part of the award, the defendants failed to provide this court with an adequate record for review.

Argued October 17, 2024—officially released February 18, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the defendant Christopher Brestelli et al. filed a counterclaim; thereafter, the case was tried to the court, *Swienton, J.*; subsequently, the court, *Swienton, J.*, granted the plaintiffs' motion to amend their complaint; judgment in part for the plaintiffs on the complaint and judgment for the plaintiffs on the counterclaim, from which the defendant Christopher Brestelli et al. appealed to this court; thereafter, the court, *Swienton, J.*, awarded attorney's fees and costs to the plaintiffs, and the defendant Christopher Brestelli et al. filed an amended appeal. *Affirmed.*

*Robert T. Rimmer*, for the appellants (defendant Christopher Brestelli et al.).

*Benjamin M. Wattenmaker*, with whom, on the brief, was *John M. Wolfson*, for the appellees (plaintiffs).

*Opinion*

WESTBROOK, J. In this action alleging, inter alia, the breach of a settlement agreement resolving disputes between abutting lakefront property owners, the defendants Christopher Brestelli and Virginia Brestelli (Brestellis)[1] appeal, following a bench trial, from the judgment of the trial court rendered against them in favor of the plaintiffs, Benjamin Whelan and Alyson Whelan (Whelans), and from the court's subsequent award of

---

[1] The Brestellis' son, Travis Brestelli, was also named as a defendant in the underlying action. The trial court, however, declined to address the count directed at Travis Brestelli, and he is not a participant in the present appeal.

costs and reasonable attorney's fees to the Whelans.[2] The Brestellis claim that the court improperly (1) determined that they breached their settlement agreement with the Whelans; (2) found that they had erected a so-called "spite fence" in violation of General Statutes §§ 52-480 and 52-570;[3] (3) allowed the Whelans to amend their complaint during trial to add an additional count sounding in breach of the implied covenant of good faith and fair dealing; (4) rendered judgment in favor of the Whelans for breach of the implied covenant of good faith and fair dealing; and (5) exceeded the scope of the parties' settlement agreement by awarding attorney's fees and costs to the Whelans. We disagree and, accordingly, affirm the judgment of the court.

The following facts, as found by the trial court and set forth in its memorandum of decision, and procedural

---

[2] The Brestellis also amended their appeal to challenge the court's granting of the Whelans' postjudgment application for a prejudgment remedy and motion for disclosure of assets. See *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 451–54, 835 A.2d 491 (2003) (*prejudgment* remedy may be sought and ordered *postjudgment* to protect plaintiff's interest in judgment during pendency of appeal), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). In their appellate brief, however, the Brestellis state that they "no longer appeal the trial court's entry of a prejudgment attachment nor the trial court's asset disclosure order as those issues are subsumed within [their] appeal of the trial court's attorney's fees order." Accordingly, we deem abandoned any claims pertaining to the award of a prejudgment remedy or the asset disclosure order. See *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 280 n.3, 145 A.3d 408, cert. denied, 323 Conn. 939, 151 A.3d 387 (2016).

[3] General Statutes § 52-480 provides: "An injunction may be granted against the malicious erection, by or with the consent of an owner, lessee or person entitled to the possession of land, of any structure upon it, intended to annoy and injure any owner or lessee of adjacent land in respect to his use or disposition of the same."

General Statutes § 52-570 provides: "An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land."

"Whereas § 52-480 provides for injunctive relief for the malicious erection of a structure, § 52-570 provides a legal remedy therefor." *Errichetti* v. *Botoff*, 185 Conn. App. 119, 125 n.4, 196 A.3d 1199 (2018).

history are relevant to our review of the claims on appeal. The Whelans are the owners of lakefront property at 575 Winthrop Road in Deep River (town), where they have lived since 2010. In 2018, the Brestellis purchased the abutting lakefront property at 585 Winthrop Road. At that time, the two properties shared a driveway. Shortly after the Brestellis moved into their property, Benjamin Whelan visited them to discuss, among other things, access to the lake and the shared driveway. During this discussion, the subject of the Brestellis' hosting a wedding shower for their son, Travis Brestelli, came up. Although Benjamin Whelan offered the Brestellis the use of his property for parking, the Brestellis declined the offer. When the event took place, the Brestellis instructed their guests to park on their property, but some guests parked along the shared driveway, including up to the Whelans' home. As the trial court stated, this event was "the beginning of the end of the neighborly relationship between the Whelans and the Brestellis. Accusations were made back and forth, some real, some imagined, and some exaggerated." At some point, Benjamin Whelan and Christopher Brestelli had an argument that ended with Christopher Brestelli telling Benjamin Whelan to "go fuck yourself."

In the spring or summer of 2019, the Brestellis decided to install a dock on their property. They sought the necessary approvals from the appropriate town agencies and from the owner of the lake. Further, because Benjamin Whelan had accused the Brestellis of mistreatment and misuse of the Whelans' property, and because the Brestellis' access to the lake was located directly behind the Whelans' house, Christopher Brestelli also decided to erect a six foot high, multipanel stockade fence so that he, his family, and their guests could access the lake with privacy. That fence, however, partially obstructed the Whelans' view of the lake and interfered with access to utility poles servicing the

Whelans' property. The Whelans filed a complaint with three town agencies opposing the Brestellis' dock. The Brestellis hired an attorney, who sent letters to the various agencies demanding that they be made aware of any action to be taken in connection with their property. The Whelans' administrative complaint ultimately was dismissed, but the Brestellis commenced a civil action against the Whelans.[4] The Whelans retained counsel to defend against the action. The parties' attorneys commenced negotiations to settle the matter, which eventually resulted in a settlement agreement that was drafted by both counsel and entered into on October 17, 2019.[5]

The settlement agreement provided that the Brestellis would withdraw their action against the Whelans. In return, the Whelans agreed to pay the Brestellis $15,000 "in full satisfaction for the [Brestellis'] property and personal injury claims . . . ." The settlement agreement also required the Brestellis to transfer to the Whelans a small portion of land containing footing drainpipes, to execute a release of rights to the driveway easement, and to construct a new, separate driveway for access to their property. The Brestellis additionally agreed to remove four fence panels that they had erected along the boundary between the properties. The settlement agreement further contained provisions prohibiting the parties from directing cameras at the other's property and from taking any action that "impedes or frustrates [the other party's] reasonable and lawful use

---

[4] The operative amended complaint in the civil action alleged intentional and negligent infliction of emotional distress, negligent misrepresentation, defamation, trespass, nuisance, and obstruction of an easement and sought to quiet title. See *Brestelli* v. *Whelan*, Superior Court, judicial district of Middlesex, Docket No. CV-19-6025900-S (September 9, 2019). The Brestellis withdrew the action on December 6, 2019.

[5] As noted by the trial court, "[a]lthough the crux of the dispute centered around the fence that the Brestellis had installed, which blocked direct access to the utilities and blocked the Whelans' view of the lake, neither issue was specifically mentioned in the [settlement] agreement."

of their property" or that "is intended to harass, vexate, frustrate, and/or intimidate the other party." The parties were to complete the transfer of land and the separation of the common driveway by December 31, 2019.

At the beginning of December, 2019, Christopher Brestelli removed the four existing fence panels in accordance with the settlement agreement. A few days later, however, he installed a new, five panel fence just forty feet from where he had removed the original fence.[6] On December 29, 2019, the Whelans' attorney emailed the Brestellis' attorney, informing him that, although the Brestellis had removed the original fence, they had "replaced it so that it sits across the [forty foot] utility right of way [thus] blocking access to the utilities. . . . One of the two reasons in the settlement for removing the fence panels was to unblock the utility [right-of-way] access (the other was to remove the blocked view of the lake)." Although the Brestellis later installed a gate in the new fence so that utility companies could access the utility poles as needed, the gate was locked and required a special tool to open. Moreover, the new fence continued to partially obstruct the Whelans' view of the lake.

In February, 2020, Benjamin Whelan notified his attorney that an inland wetlands complaint had been filed against the Whelans with the town and requested his representation at a hearing before the town's inland wetlands commission (commission). The commission's enforcement officer, Mark Reyher, had sent the Whelans a letter regarding some piles of wood chips that were located next to their driveway. The Whelans surmised, apparently correctly, that the Brestellis were responsible for the investigation.[7]

---

[6] In its memorandum of decision, the trial court implicitly credited Christopher Brestelli's trial testimony that he knew he was going to reinstall the fence on his property before he signed the settlement agreement.

[7] In its decision, the court stated that the Whelans believed that the Brestellis "were somehow responsible for [the inland wetlands] investigation and it is easy to see why." As detailed in the court's findings, in August,

The commission met on February 13, 2020, at which time the potential wetlands violation by the Whelans was discussed. The Whelans' attorney indicated before the commission that the parties' differences had been resolved and that any enforcement action was the product of bad faith on the part of the Brestellis. He maintained that Ian Cole, who had conducted a wetlands survey for the Brestellis, had forwarded his report to Reyher regarding a possible wetlands violation by the Whelans. The Whelans' attorney also suggested that there had been a coordinated effort against the Whelans by the Brestellis, their attorney, Travis Brestelli, Cole, and Reyher, the latter of whom allegedly was hostile to the interests of Benjamin Whelan. The commission elected to take no further action regarding the complaint.

In addition to removing the old fence and installing a new one, the Brestellis installed four cameras along

2019, the Brestellis, who were exploring options at that time for building their own driveway, hired a soil scientist, Ian Cole, to perform a wetlands survey on their property. During a site visit, Cole, who was accompanied by Travis Brestelli, identified potential wetlands on the Whelans' property. Cole also observed piles of wood chips next to the driveway that he believed may have affected drainage on the driveway. Cole documented his observations and, at Travis Brestelli's request, wrote two reports: one concerning the Brestellis' property and another concerning the suspected wetlands on the Whelans' property. "Allegedly, the purpose of the second report was to document the poor condition of the driveway and its cause so that the Brestellis could not be blamed. Travis Brestelli brought Cole's report to [Reyher] and also brought to [Reyher's] attention the issue with a possible wetlands violation on the Whelans' property. Reyher then contacted Cole regarding the wetlands on the Whelans' property. Cole forwarded Reyher the report, which indicated that there were piles of wood chips and debris within a jurisdictional wetland or upland review area on the Whelans' property. Communications went back and forth between the Brestellis, Travis [Brestelli], their attorney and Cole, and, although the Brestellis are adamant that they did not want to pursue a complaint against the Whelans, their feelings and intentions toward the Whelans rang loud and clear. At the request of the Brestellis, their attorney instructed Cole to change the date of the report regarding the Whelans' property from its original August, 2019, date to January 1, 2020—one day after the completion of the terms of the [settlement agreement]." (Footnote omitted.)

the new fence. The Brestellis also mounted bright yellow signs on the fence that were visible from the Whelans' house and that contained a picture of a camera and notice that the property was being monitored. Travis Brestelli, who wanted to ensure that no one trespassed on the Brestellis' property, also flew a drone with a camera directed at the Whelans' property because, as found by the court, "he felt it was pertinent to take a picture of how close [the Whelans'] equipment was to the Brestelli property and to show where the wood chips (from the driveway involved in the possible wetlands violation) were being placed." The Whelans interpreted the cameras and drone activity as additional harassment by the Brestellis.[8]

The Brestellis maintain that, at the end of December, 2019, Benjamin Whelan made a false claim to the state's Department of Transportation (department) regarding the installation of their new driveway. Specifically, Benjamin Whelan sent a letter to the department indicating that he had standing water on his property, which, he asserted, had occurred only after the Brestellis began installing their driveway. On three separate occasions, the department sent someone to inspect the properties, but it found no standing water on the Whelans' property and took no additional action with respect to the installation of the Brestellis' new driveway.

On June 1, 2020, the Whelans commenced the present action against the Brestellis. Count one sounded in breach of contract. In particular, the Whelans alleged that the

---

[8] The Brestellis, for their part, took issue with two cameras located on the Whelans' property that ostensibly were directed toward the Brestellis' property. One of these cameras was attached to a tree and pointed down the shared driveway (driveway camera), and the other was attached to a tree located near the lake (lake camera). As found by the court, the Whelans had installed the driveway camera in 2010 after there had been a burglary in their barn, but it was no longer operational. The lake camera was an inoperable "dummy" camera.

Brestellis had breached the parties' settlement agreement by moving, rather than removing, the panel fence; directing cameras at the Whelans' property; and allowing Travis Brestelli to install those cameras and to fly a drone with a camera to surveil the Whelans' property. Count two alleged that the Brestellis maliciously erected a structure in violation of §§ 52-480 and 52-570. Count three sounded in nuisance against Travis Brestelli only.

The Brestellis filed an answer, special defenses, and a counterclaim in which they asserted that the Whelans had breached the settlement agreement, including by filing the present action. The Whelans responded to the Brestellis' counterclaim, asserting a variety of special defenses.

The matter was tried before the court, *Swienton, J.*, on October 4, 5, 11, 12 and 13, 2022. On the last day of trial, the Whelans filed a motion for permission to amend the complaint to conform to the evidence presented at trial. The accompanying proposed amended complaint included a fourth count that alleged a breach by Christopher Brestelli of the implied covenant of good faith and fair dealing. The Brestellis filed an objection to the motion to amend in which they argued that the request was untimely, unduly prejudicial, and, contrary to the Whelans' assertion, did not conform to the evidence. The court granted the motion to amend on November 8, 2022, overruling the Brestellis' objections. The Brestellis filed an amended answer that included a new special defense asserting that count four was barred by the applicable statute of limitations. The parties were granted an opportunity to file simultaneous posttrial briefs, which they submitted on January 6, 2023.

The court filed its memorandum of decision on March 15, 2023, followed by a corrected decision on March

23, 2023, that fixed a typographical error. With respect to count one, the court concluded that the Brestellis breached the settlement agreement when they constructed a new fence a mere forty feet from the fence that they had agreed to remove. The court also concluded that the installation of cameras along the new fence constituted a further breach of the agreement's provision that directed the parties "not to install cameras directed at the other's property." The court found that the Whelans had proven damages because the new fence was unsightly and obstructed their view of the lake, thereby diminishing the value of the Whelans' property, and because the purpose of the settlement agreement, which included the Whelans' paying $15,000 to the Brestellis for the removal of the fence, had been frustrated. With respect to count two, the court agreed with the Whelans that the new fence constituted a "spite fence" and was in violation of §§ 52-480 and 52-570 because it served no legitimate purpose and its construction was motivated by malice toward the Whelans. On count three, which sounded in nuisance against Travis Brestelli only, the court stated that "[t]he court will not address this count" because "[n]o allegations in the complaint addressed the spite fence as a nuisance as the Whelans now argue in their brief."[9] With respect to count four, the court found that Christopher Brestelli breached the implied covenant of good faith and fair

[9] Because the court's decision disposed of all counts of the complaint brought against the Brestellis, it constitutes an appealable final judgment regardless of the court's disposition of count three. See Practice Book § 61-3. In any event, we construe the court's statement regarding count three as having effectively rendered judgment on that count against the Whelans. See *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 719, 183 A.3d 1164 (2018) ("we will not elevate form over substance when it is apparent from the memorandum of decision [whether the plaintiff prevailed on each count]" (internal quotation marks omitted)); *Avery* v. *Medina*, 174 Conn. App. 507, 517, 163 A.3d 1271 ("construction of [an order or] judgment is a question of law for the court" and "determinative factor is the intention of the court as gathered from all parts of the [order or] judgment" (internal quotation marks omitted)), cert. denied, 327 Conn. 927, 171 A.3d 61 (2017).

dealing because he entered into the settlement agreement in bad faith intending to erect a second fence only feet from where he had agreed to remove the original fence, and he waited until the agreement was completed before causing the filing of the inland wetlands complaint against the Whelans.[10] Finally, the court rejected all of the Brestellis' special defenses and ruled in favor of the Whelans on the Brestellis' counterclaim, concluding that "[t]he Brestellis have not adduced sufficient evidence to substantiate any of [their] claims that the Whelans have breached the [settlement] agreement."

The court awarded the following damages: (1) "a prohibitory injunction against the Brestellis to cease all activity [that] violates the terms of the settlement agreement and any camera surveillance on the Whelans' property pursuant to General Statutes § 52-471";[11] (2) "a mandatory injunction [against the Brestellis] pursuant to . . . §§ 52-570 and 52-480 to remove the fence panels [that] impede the Whelans' view to [the lake], or replace them with wire fence sections similar to the existing wire fence, and to remove any fence panel [that] interferes with access to the utility right-of-way . . . [with removal] completed within sixty day[s] of the date of this decision" (footnote omitted); (3) "money damages in the amount of $1"; and (4) "[a]s provided in the settlement agreement . . . reasonable costs of this action [to the Whelans] including attorney's fees, expert fees and other costs of this action." The court ordered the Whelans to submit a claim for attorney's fees and other costs of this action within thirty days

---

[10] Although the court's decision states that it "finds that the Brestellis breached the implied covenant of good faith and fair dealing," count four of the complaint as amended was directed only against Christopher Brestelli, and, thus, the court's judgment on that count necessarily was limited to him.

[11] General Statutes § 52-471 provides in relevant part: "Any judge of any court of equitable jurisdiction may, on motion, grant and enforce a writ of injunction, according to the course of proceedings in equity, in any action for equitable relief when the relief is properly demandable . . . ."

and indicated that it would hold a hearing on such claims if requested by the Brestellis within thirty days following the submission of the claims.

The Brestellis filed a motion to reargue and reconsider on April 4, 2023, which the court denied the following day. On April 10, 2023, the Whelans filed an affidavit of attorney's fees and costs totaling $156,138.12. The next day, the Whelans also filed an application for a prejudgment remedy and a motion for disclosure of assets.

On April 21, 2023, the Brestellis filed the present appeal challenging the court's judgment on the Whelans' complaint and the Brestellis' counterclaim. The Brestellis subsequently filed a timely request for a hearing on the Whelans' claim for attorney's fees and costs. It also filed an opposition to the Whelans' application for a prejudgment remedy.

On May 31, 2023, the court conducted a hearing on all outstanding motions, following which it issued orders awarding the Whelans a total award of attorney's fees and costs of $153,578.12 and granting the motion for disclosure of assets. On June 6, 2023, the court issued an order granting the Whelans' application for a prejudgment remedy in the amount of $178,000 and authorizing the Whelans to garnish or attach the Brestellis' assets. The Brestellis filed amended appeals challenging the award of attorney's fees and costs, the granting of the motion for disclosure of assets, and the granting of the application for a prejudgment remedy. See footnote 2 of this opinion. Additional facts and procedural history will be set forth as necessary.

I

The Brestellis first claim that the court improperly determined that they breached the parties' settlement agreement. According to the Brestellis, the plain and

unambiguous terms of the settlement agreement only required them to remove the then existing fence, which they did, and did not expressly preclude them, following its removal, from relocating the fence "to an area deeper into their own property." The Brestellis further take issue with the court's determination that, because the new fence obstructed the Whelans' lake view and restricted access to utility poles, the Brestellis also breached that part of the agreement that forbade the parties from interfering with, impeding, or frustrating the other parties' "reasonable and lawful use of their property." The Brestellis argue that any impairment of the Whelans' lake view and utility access could not serve as a basis for finding a breach of that provision of the settlement agreement because, as found by the court, neither the lake view nor utility access is expressly mentioned in the settlement agreement. Finally, the Brestellis argue that, to the extent the court found that they had breached the settlement agreement by installing cameras directed at the Whelans' property, the court failed to find that the Whelans had proven any damages directly related to the cameras, and proof of damages is an essential element of any breach of contract claim. The Whelans dispute each of the Brestellis' arguments. For the reasons that follow, we conclude that the court properly determined that the Brestellis breached the settlement agreement by interfering with the Whelans' reasonable and lawful use of their property. Accordingly, because we affirm the court's determination that the Brestellis breached the settlement agreement on that basis, it is unnecessary to reach the Brestellis' other arguments.[12]

---

[12] Given the nature of the relief awarded and, in particular, because the court did not award separate and distinct relief on the basis of the Brestellis' individual breaches of the settlement agreement, we may affirm the court's judgment in favor of the Whelans with respect to the breach of contract count if any one of the court's findings of a breach of the settlement agreement is supported by the record and there is evidence that the relief awarded by the court addresses a harm caused by the breach.

We begin our discussion with relevant principles of law, including our standard of review. It is axiomatic that an agreement to end a lawsuit is a binding and enforceable contract between the parties. See *Krasko* v. *Konkos*, 224 Conn. App. 589, 604–605, 314 A.3d 34 (2024); *Vance* v. *Tassmer*, 128 Conn. App. 101, 110, 16 A.3d 782 (2011), appeal dismissed, 307 Conn. 635, 59 A.3d 170 (2013). "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. . . . The interpretation of definitive contract language is a question of law over which our review is plenary. . . . By contrast, the trial court's factual findings as to whether and by whom a contract has been breached are subject to the clearly erroneous standard of review and, if supported by evidence in the record, are not to be disturbed on appeal." (Internal quotation marks omitted.) *AGW Sono Partners, LLC* v. *Downtown Soho, LLC*, 343 Conn. 309, 322–23, 273 A.3d 186 (2022). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 487, 493–94, 846 A.2d 216 (2004).

"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties *and the circumstances connected with the transaction.* . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the

contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Emphasis added; internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 313, 948 A.2d 318 (2008). In other words, "[i]n ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." (Internal quotation marks omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 109–10, 570 A.2d 690 (1990).

Here, the court found that the Brestellis breached § F (v) of the settlement agreement when they erected the new fence on their property because, like the original fence that they had removed, the new fence obstructed the Whelans' lake view and restricted access to their utility pole, which "interfered with the Whelans' reasonable and lawful use of their property . . . ." We agree with the Whelans that the court's finding is legally correct and well supported by the record, and, thus, should not be disturbed by this court.

Subsection (v) of § F of the parties' settlement agreement states that "[t]he [p]arties agree that no party to this agreement, their agents, employees, or guests shall interfere with another party's reasonable and lawful use of their property. Nor shall any party to this agreement take any action that impedes or frustrates another's reasonable and lawful use of their property." Neither party claims that the language of this subsection is unclear or ambiguous.

With respect to this first claim, the Brestellis do not challenge the court's factual finding that the new fence, like the previous fence, partly obstructed the Whelans' view of the lake and restricted access to the Whelans'

utility pole. Rather, the sole argument advanced by the Brestellis against the court's determination that the Brestellis breached § F (v) of the settlement agreement is that, because the Whelans' lake view and utility pole access are not expressly mentioned in the settlement agreement, they cannot serve as a proper basis for finding that the Brestellis had interfered with the Whelans' reasonable and lawful use of their property. This argument lacks merit.

The agreement does not define, limit, or qualify what comprises a "reasonable and lawful use" of property or what would constitute an act that "impedes or frustrates" such a use. Accordingly, we agree with the Whelans that the plain meaning of this provision is that the parties agreed not to take *any* future action that interferes with *any* reasonable and lawful use by the other party of their property. The Brestellis do not direct our attention to any other language in the agreement that is contrary to this construction, nor do they cite to any case law that would support their argument that the parties intended the agreement to protect only those reasonable and lawful uses expressly referenced in the agreement. It is clear from the circumstances surrounding the making of the settlement agreement that one purpose of the agreement was to resolve the parties' ongoing disputes, which necessarily included the Whelans' complaints regarding the Brestellis' original fence and its effect on the Whelans' use and enjoyment of their property.[13]

We conclude that the court properly determined that, by erecting a new fence that continued to interfere with the Whelans' reasonable use and enjoyment of their

---

[13] As the trial court queried in its decision: "After all the disagreements, complaints, lawsuits, etc., did the Brestellis even think that the erection of this fence would be acceptable under the terms of the [settlement] agreement? Or did they even care? Or, as the court concludes, was it just erected out of spite for the Whelans?"

property, the Brestellis breached § F (v) of the settlement agreement. Accordingly, we reject the Brestellis' claim that the court improperly rendered judgment for the Whelans on the breach of contract count.

## II

The Brestellis next claim that the court improperly determined that they had erected a "spite fence" in violation of §§ 52-480 and 52-570. In support of this claim, the Brestellis argue that the record contains no support for the court's findings as to any asserted harm caused by the new fence. Rather, according to the Brestellis, the record demonstrates that they had "logical, legitimate and necessary reasons" for constructing the new fence. We disagree.

"The Connecticut progenitor of what have commonly been called the spite fence cases appears to be *Whitlock* v. *Uhle*, 75 Conn. 423, 53 A. 891 (1903). . . . In [*Whitlock*], our Supreme Court construed and applied the predecessors to . . . §§ 52-480 and 52-570 and set forth the elements necessary to state a cause of action under §§ 52-480 and 52-570. The court held that the essential elements are: (1) a structure erected on the [defendant's] land; (2) a malicious erection of the structure; (3) the intention to injure the enjoyment of the adjacent landowner's land by the erection of the structure; (4) an impairment of the value of adjacent land because of the structure; (5) the structure is useless to the defendant; and (6) the enjoyment of the adjacent landowner's land is in fact impaired. . . . The plaintiff bears the burden of demonstrating each of these elements by a fair preponderance of the evidence." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Errichetti* v. *Botoff*, 185 Conn. App. 119, 125–26, 196 A.3d 1199 (2018).

In their appellate brief, the Brestellis' arguments against the court's determination that they had erected a

"spite fence" focus exclusively on whether the Whelans showed that the new fence impaired the value of their property or their enjoyment of it, essentially attacking the court's findings under the fourth and sixth elements of the *Whitlock* test. First, the Brestellis argue that the court's finding that the fence obstructed the Whelans' view of the lake "is not supported by the record." Second, they argue that the only loss the Whelans suffered as a result of the new fence was a partial impairment of their lake view. Third, they challenge the court's finding that the new fence was installed across what previously was an "unspoiled" wooded area. Fourth, they contend that no evidence was presented to substantiate the finding that the new fence impacted access to the Whelans' utilities. Because the Brestellis challenge the court's factual findings, we employ the clearly erroneous standard of review. See, e.g., *Chase & Chase, LLC* v. *Waterbury Realty, LLC*, 138 Conn. App. 289, 302, 50 A.3d 968 (2012). We reject each of the Brestellis' arguments.

The Brestellis' first argument fails because, contrary to their assertion, there is evidence in the record to support the court's finding that the new fence impacted the Whelans' view of the lake. For example, the attorney who was hired by the Whelans in 2019 to defend against the Brestellis' lawsuit, Keith Ainsworth, testified that the original fence "obviously blocked a good portion of [the Whelans'] view . . . from their house to the lake." When asked whether the new fence blocked the Whelans' view of the lake, he answered, "Yes." There was corroborating evidence in the form of communications between Ainsworth and the Brestellis' attorney in which Ainsworth also indicated that the new fence obstructed the Whelans' view of the lake. Although Benjamin Whelan testified that the fence did not "completely obscure" the Whelans' view of the lake, it is clear from his testimony that there certainly was a partial

obstruction. We agree with the court that "[w]hen someone buys lakefront property, one of their main concerns centers around the view." (Internal quotation marks omitted.) Consequently, the Whelans may be damaged by even a partial obstruction of that view, not only because of its effect on their enjoyment of the property but because of a related negative effect on the property's value.

With respect to the second and third arguments, the Brestellis have offered no compelling reason why the court's finding of nominal damages and injunctive relief could not be sustained solely on the basis of the partial obstruction of the Whelans' lake view. Nevertheless, the partial obstruction of the Whelans' view is not the only evidence of loss to the Whelans. The court found that, as viewed from the Whelans' property, the fence itself was unsightly in that it had yellow signs on it "which no one would want to see out of their picture window." Moreover, even if we agree with the Brestellis' contention that the court's description of the location of the fence as "unspoiled" is contradicted by other evidence in the record, including that the same area contains, among other things, utility poles, we are convinced that any error in the court's description is harmless and does not undermine the court's overall findings regarding the negative impact of the new fence on the view from the Whelans' property.[14]

Finally, we reject the argument that there was a lack of evidence to support the court's finding that the new fence restricted access to the Whelans' utility pole. Ainsworth testified at trial that the new fence blocked utility workers' access to the Whelans' utility pole to conduct repairs and that he had notified the Brestellis of this fact via email and subsequent letter, copies of which

---

[14] The Brestellis do not challenge the court's finding that the Whelans' house "is located in such a way as to enjoy the view of the lake and its natural surroundings."

were submitted into evidence. Although the Brestellis direct our attention to contradictory testimony by Christopher Brestelli that the new fence did not interfere with the Whelans' utility access, it is not the role of this court on appeal to reweigh the evidence or pass on the credibility of witnesses. It is the role of the trier of fact, in this case the court, to weigh contradictory evidence and to come to a reasoned conclusion as to the facts. See *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 412, 94 A.3d 588 (2014) ("it is the exclusive province of the trier of fact to make determinations of credibility, crediting some, all, or none of a given witness' testimony" (internal quotation marks omitted)); *Wiblyi* v. *McDonald's Corp.*, 168 Conn. App. 77, 89 n.14, 144 A.3d 1075 (2016) (factual findings were not inherently flawed merely because contradictory evidence was presented, as "[i]t is the duty of the trier of fact to weigh such evidence and come to a conclusion on the basis thereof"). The court's finding that the new fence blocked the Whelans' utility access was not clearly erroneous.

Having thoroughly reviewed the record, briefs, and arguments of the parties, we conclude that the Brestellis have failed to demonstrate that any of the court's factual findings were clearly erroneous, and there is ample support in the record for the court's determination that the Brestellis erected a "spite fence" in violation of §§ 52-480 and 52-570. We, therefore, reject the Brestellis' claim to the contrary.

III

The Brestellis' third claim is that the court improperly allowed the Whelans to amend their complaint at trial to add an additional count against Christopher Brestelli alleging a breach of the implied covenant of good faith and fair dealing. The Whelans counter that the Brestellis have failed to demonstrate how they were prejudiced

by the amendment or that the court abused its considerable discretion to allow amendments to pleadings during or after trial in order to conform with the evidence presented. We agree with the Whelans.

The following additional facts are relevant to our review of this claim. During his testimony on the fourth day of trial, Christopher Brestelli stated that, at the time that he entered into the settlement agreement with the Whelans, pursuant to which he agreed to remove the original fence from his property, he intended to put up a new fence in the same general area.[15] The Whelans viewed this testimony as effectively an admission by Christopher Brestelli that he had entered into the settlement agreement in bad faith, and the Whelans filed a motion with the court soon after his testimony seeking to amend the operative complaint to conform with this new evidence.

"Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [defendant's] burden . . . to demonstrate that the trial court clearly abused its discretion. . . . A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered

---

[15] The following exchange occurred between the Whelans' counsel and Christopher Brestelli regarding his intent to put up a new fence:

"Q. Earlier . . . when you were on the stand . . . the last time, you said before you signed the settlement agreement . . . you decided to put up the second fence. Isn't that true?

"A. Yes. . . .

"Q. [Y]ou didn't tell Ben[jamin] Whelan that you were going to reinstall the fence after the settlement agreement was signed, did you?

"A. The settlement agreement said that there would be no disruption of doing anything on your own property that was legal. And that's what I did.

"Q. But you didn't . . . tell Ben[jamin] Whalen that after you signed the settlement agreement that you were going to put up the new fence, did you?

"A. No, I didn't."

in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *KDM Services, LLC* v. *DRVN Enterprises, Inc.*, 211 Conn. App. 135, 140, 271 A.3d 1103 (2022). In considering whether a trial court properly has exercised its discretion with respect to a request to amend a complaint, this court has stated that, "[i]n an amended complaint, [i]t is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated. . . . A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief." (Internal quotation marks omitted.) Id., 141.

Here, the Whelans' amendment of the complaint to include a separate count asserting a breach of the implied covenant of good faith and fair dealing did not require consideration of a different factual situation. Rather, the factual predicate for the new count related directly to the other allegations of breach of the settlement agreement predicated on the Brestellis' having erected a new fence shortly after removing the old one and arose out of the trial testimony of Christopher Brestelli, in which he indicated that he had signed the settlement agreement knowing that he intended to put up a new fence on their property despite agreeing to remove the similar, existing fence. Because this evidence did not arise until trial, we cannot conclude that the Whelans were negligent by not raising the breach

of the implied covenant of good faith and fair dealing in their original complaint either as a separate count or as an aspect of the existing breach of contract count, nor did the Whelans delay seeking to amend the complaint on the basis of this new evidence. The Brestellis, moreover, have failed to show that they were unduly prejudiced by the amendment. The amendment did not inject into the case anything that required the Brestellis to prove additional facts nor were they precluded from defending against the new allegations. If the Brestellis believed it was necessary to present additional evidence in response to the new count, they could have sought to open the evidence after the court granted the amendment. They did not do so. In other words, on the record before us, the Brestellis have failed to demonstrate that the court's decision to allow the amendment caused any unreasonable delay, misled or took unfair advantage of the Brestellis, or confused the issues. See, e.g., *Moore* v. *Sergi*, 38 Conn. App. 829, 836–37, 664 A.2d 795 (1995) (upholding amendment of counterclaim following trial). In short, we are not convinced that the court abused its discretion in allowing the amendment of the complaint and, accordingly, reject the Brestellis' claim.

## IV

The Brestellis also relatedly claim that, even if the court properly allowed the amendment to the complaint, it improperly rendered judgment in favor of the Whelans on the ground that Christopher Brestelli breached the implied covenant of good faith and fair dealing. We disagree.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." 2 Restatement (Second), Contracts § 205, p. 99 (1981). "In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive

the benefits of the agreement. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. . . . [B]ad faith may be overt or may consist of inaction, *and it may include evasion of the spirit of the bargain . . . .*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, 322 Conn. 385, 399–400, 142 A.3d 227 (2016); see also 23 R. Lord, Williston on Contracts (4th Ed. 2018) § 63:22, p. 554 ("party who evades the spirit of the contract . . . may be liable for breach of the implied covenant of good faith and fair dealing"). Accordingly, a plaintiff may prevail on a claim for breach of an implied covenant of good faith and fair dealing if the plaintiff can show that a defendant engaged in conduct that, while perhaps not technically breaching any express provision of the parties' contract, nonetheless deprived the plaintiff of an intended benefit of the bargain. There was sufficient evidence before the court in the present case to support its finding that Christopher Brestelli breached his duty to comply with his obligation to act in good faith under the settlement agreement.

The Brestellis would have us conclude that because the only action they expressly agreed to take under the settlement agreement regarding their fence was to remove the fence, they were not precluded from erecting a new fence elsewhere on their property. This argument ignores, however, that the clear purpose of the settlement agreement was to resolve the dispute between the parties, which included the Whelans' claim that the fence the Brestellis had erected near the Whelans' home interfered with their view of the lake and access to their utilities. Thus, one of the benefits to the Whelans

of entering into the settlement agreement, as understood by both the Whelans and the Brestellis, was the Brestellis' promise to remove the offending fence and, thus, to restore their view and utility access. The evidence fully supports the trial court's conclusion that Christopher Brestelli, by agreeing to remove the fence while admittingly intending to erect a new fence with the same offensive characteristics, intentionally entered into the settlement agreement in bad faith and interfered with the Whelans' right to a benefit of their bargain. His actions and admitted intention undoubtedly support the court's determination that Christopher Brestelli breached the implied covenant of good faith and fair dealing.

V

Finally, the Brestellis claim that the trial court improperly exceeded the scope of the parties' settlement agreement by awarding the Whelans their reasonable attorney's fees and costs with respect to matters that fell "outside the four corners of the settlement agreement." The Whelans counter that, under the plain language of the settlement agreement, they are entitled to the attorney's fees and costs awarded by the court. We agree with the Whelans.

The relevant legal principles and standard of review governing claims challenging an award of attorney's fees are well settled. "Connecticut adheres to the so-called American rule, which prohibits the award of [attorney's fees and costs] to the prevailing party unless such award is premised on statutory directives *or is pursuant to contract*." (Emphasis added; internal quotation marks omitted.) *Jacques* v. *Jacques*, 223 Conn. App. 501, 507, 309 A.3d 372 (2024). "Whether any award is to be made and the amount thereof lie within the discretion of the trial court . . . . Because the trial

court is in the best position to evaluate the circumstances of each case, we will not substitute our opinion concerning counsel fees or alter an award of attorney's fees unless the trial court has clearly abused its discretion." (Emphasis omitted; internal quotation marks omitted.) *WiFiLand, LLP* v. *Hudson*, 153 Conn. App. 87, 101–102, 100 A.3d 450 (2014). "In reviewing a claim that attorney's fees are authorized by contract, we apply the well established principle that [a] contract must be construed to effectuate the intent of the parties, which is determined from [its] language . . . interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 327, 63 A.3d 896 (2013).

In the present matter, the parties' settlement agreement contains a provision expressly authorizing an award of attorney's fees and costs to the prevailing party in any action to enforce the settlement agreement. Specifically, § G of the settlement agreement, titled "Enforcement," provides in relevant part: "The nonprevailing party agrees to reimburse the prevailing party for all reasonable costs incurred by the prevailing party in enforcing [the settlement agreement] or in taking reasonable measures to remedy or abate any violation hereof, including without limitation the costs of suit and reasonable expert and attorneys' fees. . . ."

The record before us supports the court's determination that the Whelans were the prevailing party in the underlying litigation seeking to enforce provisions of the settlement agreement. Although the Brestellis argue that the Whelans did not prevail with respect to every aspect of the underlying litigation, noting, for example, that the court did not rule in their favor on the nuisance count directed at Travis Brestelli, they were not required to do so in order to recover under the agreement. This

court previously has held that a successful plaintiff is properly regarded as the prevailing party if "there is success on the merits of the case although not to the extent of the plaintiff's original contention, or where the plaintiff is not awarded the entire claim. . . . [I]f the prevailing party obtains judgment on even a fraction of the claims advanced, or is awarded only nominal damages, the party may nevertheless be regarded as the prevailing party and thus entitled to an award of costs." (Internal quotation marks omitted.) *Premier Capital, Inc.* v. *Grossman*, 92 Conn. App. 652, 661, 887 A.2d 887 (2005). Thus, the court properly awarded to the Whelans their reasonable attorney's fees pursuant to the terms of the parties' settlement agreement.

"It is well settled that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing. . . . An evidentiary hearing is only one of many methods to satisfy this requirement. . . . A trial court may assess the reasonableness of the fees requested using any number of factors, including its general knowledge of the case, sworn affidavits or other testimony, itemized bills, and the like." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 660. As in *Premier Capital, Inc.*, to the extent that the Brestellis also claim that the court abused its discretion regarding its determination as to the amount of attorney's fees it awarded or that certain categories of fees should not have been included as part of the award, our review of that aspect of the Brestellis' claim is limited due to the inadequacy of the record provided.

In the present case, the court did not hold a hearing and did not file a memorandum of decision that set forth the factual basis for its order awarding attorney's fees and costs to the Whelans. The court did not address any of the arguments raised by the Brestellis in their opposition. The totality of the court's analysis in support of its order was as follows: "The court having

reviewed the affidavits, invoices, and considering the arguments of counsel together with the objection filed by the [Brestellis] in this matter awards attorney's fees in the amount of $147,801.96, plus costs in the amount of $5776.16 for a total award of attorney's fees and costs of $153,578.12." We do not know from this statement which factual findings, if any, formed the basis of the court's award. Without a more fulsome statement regarding the factual basis for the court's award, our consideration of whether the court abused its considerable discretion in crafting an award of attorney's fees is hampered. The Brestellis had the obligation to provide this court with an adequate record for review. We cannot consider the matter de novo, engage in pure speculation as to the basis of the court's award, or substitute our opinion for that of the trial court. On the basis of the record provided, we cannot conclude that the trial court has clearly abused its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.